Allen, J.
It is insisted for the plaintiff in error, that a setoff is a cross action; and that as, by the statute, no action could be maintained to recover the amount of the clerk’s fee bills till the sheriff had returned that they could not be levied by distress, these fee bills could not be used by way of setoff. The fees were due to the officer- from the time of the service rendered: the debt existed, and though the statute, for thd benefit of the debtor, and to prevent him from being subjected to additional costs, prohibits a suit until an effort has been made to collect it by distress, this only regarded the remedy. The english statute permitted mutual debts to be set off; ours authorizes the defendant to make all discount he can against the debt; and though a plea of setoff is in the ñatee of a cross action, still the debt being a subsisting one, and a proper discount, it is embraced by the words of the statute, though another law affecting the remedy may have required some other step to be taken before an action could be maintained for it. The point has been settled by the english courts, upon a statute somewhat analogous. The statute of 2 George 2. *631 ch. 23. provided, that no attorney or solicitor shall commenee or maintain any action or suit for the recovery of any fees, at law or in equity, until the expiration of one month after he shall have delivered to the party a hill of such fees. In Martin v. Winder, Dougl. 198-9. in notis. a motion was made by the defendant, an attorney, to stay proceedings till one month after the delivery of his bill should expire, that he might be enabled to set it off: and the court held, that though an attorney cannot bring an action on his bill, till it has been delivered one month, that circumstance is not necessary to enable him to set it off. In Bulman v. Birkett, 1 Esp. Rep. 449. the question was decided in the same way. In each case, the court heJd that the claim could be set off, though at the time no action could have been maintained. The cases are in point, and decisive as to this objection.
The court having permitted the introduction of the evidence, the plaintiff moved for an instruction, that if the jury believed the account had accrued and fallen due more than five years before the institution of the suit, the statute of limitations was a bar: the court gave the instruction so far as it applied to items in the account other than clerk’s fees, but as to them, instructed the jury, that the statute of limitations was not a bar. It was argued for the defendant, that these fee bills were admissible evidence under the plea of payment; that accounts arising after the execution of the bond should be viewed as discounts applicable to and connected with the bond, and not in the light of a setoff. Ido not think so. If this position were correct, the statute of limitations would never avail against setoffs accruing after the date of the bond. Yet the inconvenience and injustice growing out of the attempt to set off old and stale claims, after the loss of evidence and the death of parties, is as great where they are used by way of setoff as where they are asserted in an independent action. The statutes of setoff apply to unconnected debts. At common *632 law, where the dealings constitute an account of receipts and payments, the balance is considered the debt, and therefore it is not necessary to plead or give notice of setoff. And this was the decision of the court in the case of Dale v. Sollet, cited at the bar. The defendant, as agent of the plaintiff, deducted £ 40. out of a sum recovered by him for the plaintiff, for his labour and service'therein ; and the court held, that this was not in the nature of a cross demand or mutual debt ,• it was a charge which made the sum of money received for the plaintiff’s use so much the less. In this, ail’d other cases of a similar character, the transactions were connected; the claim grew out of the dealings of the parties, and reduced the demand. But in the present case, the setoff had no connection with the bond. It was an independent debt due the defendant; a demand which he might have enforced by distress or action: and he was not bound to avail himself of it by way of setoff. But under the plea of setoff, he had a right to set it up. And I do not think the court erred in the instruction given. The argument proceeds upon the gromid, that a setoff is a cross action; that it cannot avail where a cross action could not be maintained, and if a cross action could have been maintained for these fee bills, to such an action the statute would have been a good defence, and therefore must be a good defence against them when used as setoffs. The authorities cited shew, that the setoffs may be relied on, if an existing debt, although no action at law could be maintained at the túne. And the only enquiry is, when did the statute begin to run against these fee bills ? By the law, as it formerly stood, no period was prescribed, within which fee bills were to be placed in the officer’s hands for collection. The inconvenience resulting from this has been remedied by the statute of March 1839, which prohibits the collection by distress or suit after the expiration of five years: but the proviso to that statute shews, that previous to its *633 passage there was no limitation to the period within which they could he collected by distress, for it allows one year to put into the hands of the officer all fees due at the passage of the statute. Until the claims were placed in the officer’s hands and returned, no cause of action existed. The statute of limitations relates to the time the cause of action accrued ; and it not appearing here, that the clerk’s tickets had ever been returned, the defendant could not have maintained his action upon them. When tickets are returned, the cause of action accrues and the statute commences running, but not until then. The court therefore was correct in the instruction given that the statute did not prevent the allowance of the fee bills, for the limitation had not commenced running at the time of the trial.
The other judges concurred. Judgment affirmed.
*634 In the case of Aylett v. Roane, decided November 9. 1844, judge Allen made the following remarks on the reporter’s abstract of the decision in Dabney v. Catlett, ante 383.
“ It would seem, from the abstract of the reporter, that it is supposed that this court has decided in the case of Dabney v. Catlett, that a bond which does not contain this additional covenant” [a covenant for the protection of the purchaser of the property required by the statute of 1828, Supp. to Rev. Code, ch. 215. § 1. p. 272.] “ is not a good statutory bond for any purpose, and therefore could furnish no protection against the action of the claimant of the property. That was a proposition insisted on by the counsel for the appellant in that case, for the purpose of his argument; but no such decision was made, or intended to be made, by the court. That was a suit instituted by the sheriff upon a bond of indemnity similar to the one under consideration. The declaration, after setting out the condition, charged that the claimant of the property had sued the sheriff and recovered damages from him, which he was seeking to recover from the obligors. There was a general demurrer to the declaration, which was sustained by the court below; this court reversed the judgment, and remanded the case. No reasons were given; but it is apparent, that, whether the bond was good as a statutory or a common law bond, the demurrer should have been overruled. If good as a statutory bond, as I think it was, so far as the claimant of the property was concerned, that did not deprive the sheriff of his remedy upon it. The law permitting the sheriff to require a bond of indemnity, was in ease of the sheriff; to relieve him from the responsibility which at common law rested on him. It is to be made payable to him, and is to contain a provision *635 for his indemnity. Unless the law had contained a provision authorizing a third person to put it in suit in the name of the sheriff, he alone could have sued upon it. When he has taken a good bond, the law protects him from the action of the party claiming the property, unless the sureties in the bond become insolvent. But this is matter of defence which the sheriff may rely on or not at his election, and his failure to do it in a suit against him by the claimant of the property, does not change or diminish the liability of the obligors in the bond. They are bound to indemnify the sheriff, as well as to pay the claimant of the property any damages he may sustain. When the claimant recovers his damages from the sheriff, they are damages sustained by the sheriff in consequence of the seizure and sale of the property, for which the obligors are bound to indemnify him. Any other construction would, render the condition to indemnify the sheriff himself supererogatory. The court, therefore, without entering into the question, whether the bond was a good statutory or a common law bond, because it did not arise in the case, held that the action could be maintained.”